2352

John B. REMBERT, Frank A. Wright, Sr. and Thomas B. Gue, as Trustees under the Will of James Izlar Sims, respondents v. Mary Sims GRESSETTE, Cherry Sims Rembert, Alice C. Sims, individually and as Executrix of the Estate of James Loyal Sims, Alice Sims and Georgia Sims, of whom Alice C. Sims, Alice Sims and Georgia Sims are appellants, and Mary Sims Gressette, Cherry Sims Rembert are also respondents.

(458 S.E. (2d) 552)

Court of Appeals

*Douglas N. Truslow,* Columbia, *for appellants.*

*Adele J. Pope, J. Kershaw Spong* and *D. Reece Williams, III,* all of *Robinson, McFadden & Moore,* Columbia, and *F. Lee Prickett, Jr.,* of *Felder and Prickett,* St. Matthews, *for respondents.*

Heard Apr. 3, 1995.

Decided May 8, 1995.

*Per Curiam:*

In this action trustees requested the final settlement of a trust and the payment of trustee commissions and attorney fees. Three beneficiaries, Alice C. Sims, Alice Sims, and Georgia Sims (the Alice group) opposed the planned distribution of the trust assets and counterclaimed against the trustees for an accounting, breach of fiduciary duties, and mismanagement of the accounting, breach of fiduciary duties, and mismanagement of the trust. Because the two remaining beneficiaries, Mary Sims Gressette and Cherry Sims Rembert, agreed to the planned distribution, they did not contest the trustees' actions in managing the trust. The parties reached an agreement on the proportionate distribution of the trust assets prior to trial.[1] After a nonjury trial, the court affirmed the ac-

---

[1] The parties agreed that whatever net assets of the trust were available for ultimate distribution, including any which may be added to the trust as a result of this action, would be distributed as follows: Mary Sims Gressette, one-third; Cherry Sims Rembert, one-third; Alice C. Sims, one-ninth; Alice Sims, one-ninth, and Georgia Sims, one-ninth.

tions of the trustees, approved payment of $20,000 to the trustees as commissions, and approved the payment of attorney fees from the trust. On appeal the Alice group contends the court erred in finding the trustees upheld their fiduciary duties and properly accounted for trust funds. They also contend the court erred in ordering payment of attorney fees, costs, and commissions for the trustees. We affirm.

## BACKGROUND

James Izlar Sims died on August 13, 1957. He was survived by his wife, Isabelle Wannamaker Sims, and three children, James Loyal Sims, Mary Sims Gressette, and Cherry Sims Rembert. In his will, Sims established both a marital and a residuary trust. The net income from both trusts was to be paid to Isabelle Sims for her life. She was given a testamentary power of appointment over the principal of the marital trust. At her death, the principal of the marital trust was to be distributed to those persons designated as ultimate recipients of the residuary trust principal, including Sim's three children or, if one of them died before distribution, to that child's heirs.

Sims designated his son, James Loyal Sims, and his sons-in-law, James H. Gressette and John B. Rembert, as the initial trustees. James Loyal Sims managed the trust assets and kept the trust books from 1957 until his death in 1962. Thereafter, James Gressette managed the assets and kept the books until 1979. In September of 1979, because of James Gressette's bad health, John Rembert brought as action seeking the appointment of Thomas B. Gue and Frank A. Wright Sr. as additional trustees.

Isabelle Wannamaker Sims died intestate on March 16, 1986. Two of James Sims' children, Mary Sims Gressette and Cherry Sims Rembert, survived their mother. The child who had predeceased his mother, James Loyal Sims, had three heirs, Alice C. Sims, Alice Sims, and Georgia Sims.

The trial judge found the value of the personal property and real estate in the trusts to be $278,350 in 1957. From 1958 through 1985 he found the trustees authorized payments to Isabelle Wannamaker Sims totalling $733,600. On the date of trial, he valued the assets available for distribution, prior to payment of commissions and attorney fees at $414,388.

## I. MISMANAGEMENT OF TRUST

The court found no liability on behalf of the trustees for any transactions concerning their management of the trust. The Alice group argues the court erred in failing to find the trustees mismanaged the trust and breached their fiduciary duties.

Under the will of James Izlar Sims, the trustees were directed to "hold, manage, invest, and reinvest," the trust assets and pay the "net income" to Isabelle Wannamaker Sims for her life. The will gave the trustees certain specific powers to deal with the properties in the trusts and stated the powers were to "be exercised primarily in the interest of the life beneficiary." The will further stated the trustees

> may freely act under all or any of the powers of this will given to them in all matters concerning my estate, and the trusts hereby established, after forming their judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue, without the necessity of obtaining the consent or permission of any person or court. In addition to the specific powers herein enumerated, the trustees . . . shall have the right to manage the trust property as though it were their own individual property.

After the death of Isabelle Sims, the will required that the trustees divide the property of the marital and residuary trusts into three equal parts. This property was to be paid over to Sim's three children or their heirs.

The Alice group presented an expert witness who was an attorney and a certified public accountant. He analyzed the cash journals for the trusts over the period of 1958-1985, when income was being paid to Isabelle Sims. He compared gross income and expenses in the cash journals to evidence of direct payments to Isabelle Sims and concluded the trustees paid Isabelle Sims $733,600, which amounted to an overpayment of net income of $268,152. The expert also analyzed available records to trace the disposition of estate assets. He testified he could not account for $145,457 of the proceeds of asset sales. He did not testify the trustees appropriated the money for themselves, but rather testified only that he could not find journal entries to account for these proceeds.

All parties stipulated Thomas Gue and Frank Wright Sr. had no involvement in any transactions or management of the trust prior to their appointment in 1979. Between 1957 and 1962 the books and records of the trust were kept by James Izlar Sims, the husband and father of the Alice Group. After his death, Sim's wife, Alice C. Sims, an appellant in this action, disposed of the records. James H. Gressette kept the books and managed the trust from 1962 until September 1979 when Gue and Wright were appointed. The trial judge found the books and records of the trust from its inception until 1979 were not kept by any now-living trustees, and were incomplete in that monies coming into and going out of the trust when assets were sold or purchased were not recorded. However, the court found the records from September 1979 to the present properly accounted for all trust transactions. Even though the judge criticized the record keeping, he concluded the trustees performed their duty to provide funds for the care of Isabelle Wannamaker Sims who lived basically as an invalid in her home for more than twenty-nine years after her husband's death.[2] She was bedridden and required personal sitters for most of the time. She had no funds of her own and received no government benefits. The circuit court's conclusion concerning the trustee's payment of net income to Isabelle Sims is certainly well supported by the record.

The Alice Group also claims the trustees breached their fiduciary duties. The original trustees, of whom John Rembert is the only survivor, were all family members. Rembert testified he understood that the trustees could acquire, dispose of, lease, or rent the trust property as if it were their own in order to derive as much income as they could for the support of Isabelle Sims, pursuant to the trust directive. He stated he personally did not negotiate any of the real estate transac-

---

[2] Plaintiffs' Ex. 25 indicates the trustees prior to 1979 did not attempt to allocate receipts between income and principal in accordance with the South Carolina Revised Uniform Principal and Income Act. Additionally, the current trustees did not attempt to make formal allocations of receipts between income and principal from September of 1979 until the death of Isabelle Sims. However, they provided a computation during discovery which indicated the actual distributions to Isabelle Sims during the period from 1979 to her death were not more than "net income" as defined in the Revised Uniform Principal and Income Act. Further, the Alice Group's expert did not utilize the Act in making his calculations.

tions for the trust because he trusted James Loyal Sims and James Gressette to manage the trust.

A 1963 agreement signed by Mary Sims Gressette, Cherry Sims Rembert, and Alice C. Sims, individually, and as executrix of the Estate of James Loyal Sims, was a crucial point of controversy during the trial.[3] According to John Rembert, this agreement was promulgated because James Loyal Sims wanted to acquire only the newspaper stock from his father's estate. After James Loyal Sims died, Alice C. Sims executed the agreement. Although Alice Sims and Georgia Sims were not parties to the agreement, Rembert testified he thought Alice C. Sims was acting in the best interests of, and behalf of, her children when she signed the agreement. Rembert testified the trustees considered themselves bound by the agreement and operated under it until after Isabelle Sims died, when the trustees learned for the first time that the Alice group objected to the agreement.

Mr. Rembert clearly felt the trustees had operated in good faith, based on their understanding of how the testators three children ultimately wanted to dispose of the assets of their father's estate. It is also obvious Rembert felt the trustees were primarily charged with looking after the needs of Isabelle Wannamaker Sims. There is no indication through testimony or otherwise that the trustees attempted concealment of any transaction over all the years the trust existed.

Thomas Gue, Mary Sims Gressette's son-in-law, testified he began keeping the trust records in 1982. In 1979 when he became a trustee, he did not inquire into the prior handling of

---

[3] The agreement provided, in part, that Mary Sims Gressette and Cherry Sims Rembert relinquished and assigned to Alice C. Sims any interest or claim they had to sixty shares of stock in Sims Publishing Company valued at $36,000. Alice C. Sims relinquished and assigned to Mary Gressette Sims and Cherry Sims Rembert any interest she had in sixty shares of stock of Orangeburg Theatres valued at $30,000, and one hundred twenty shares of stock in a radio station valued at $12,000. Additionally, Cherry Sims Rembert and Alice C. Sims relinquished and assigned to Mary Sims Gressette any interest they might have in stock of the Bank of Orangeburg.

In 1968, the trustees sold the Bank of Orangeburg stock to Mary Sims Gressette for $92,007.52 in demand notes. The notes were not collected. Rembert testified the transaction relied upon the 1963 agreement, but dividends from the stock went to Isabelle Sims.

Alice C. Sims purchased the Sims Publishing Company stock from the trustees in 1963 for $36,000. With this purchase, she owned fifty percent of the stock of the company.

the trust. He stated the trustees felt their main goal was to take care of the needs of Isabelle Wannamaker Sims. When a first effort was made to settle the trust in 1987, Gue testified they attempted distribution pursuant to the 1963 agreement.

When Alice C. Sims asked Frank Wright to serve as trustee in 1979, he became the only non-family member trustee. He testified no one raised concerns to him about the past management of the trust. He did not keep the records of the trust, but became involved whenever there was a business transaction. Although he was an accountant, he did not discuss the allocation of income and principal with the other trustees. Once he learned settling the trust under the 1963 agreement was disputed, he felt a court should determine the distribution. He also felt he should hire his own attorney when the Alice group brought counterclaims against the trustees.

Most of the Alice group's complaints concerning mismanagement of the trust assets are directed at John Rembert, the only surviving original trustee. They specifically attack the transfer of Bank Orangeburg stock to Mary Sims Gressette in 1968 in exchange for demand notes which were never collected.[4] However, the court concluded John Rembert was not personally at fault for this transaction because he believed it complied with the desires of the family as evidenced by the 1963 agreement. The court further concluded the Alice group was barred from asserting any claims against Rembert because, among other reasons, they benefitted from the 1963 agreement by selling the Sims Publishing Company stock,[5] and they were barred by laches because the transactions they complained about occurred before 1979. The record amply supports the conclusions of the circuit court with respect to alleged mismanagement of the trust assets by the trustees.[6]

---

[4] This transaction accounts for $92,007 of the $191,957 calculated by the expert witness to be "missing" from the trust journals. We note the sum of $36,000 paid by Alice C. Sims for the Sims Publishing Company stock is also denoted as "missing."

[5] Alice C. Sims sold the Sims Publishing Company stock for approximately $2,000,000 in 1980. Alice and Georgia Sims, her daughter, each received $335,000 by virtue of a noncompete agreement.

[6] We additionally note the court denied the appellant's motion to add the trustees as individual parties to the suit. There is no appeal from this ruling.

## II. Commissions and Attorney Fees

The Alice group also asserts the court erred in awarding $20,000 in trustee commissions to John Rembert and Thomas Gue and in approving the payment of attorney fees by the trust. Again we find no error.

The group's position on commissions is based upon the assertions previously discussed concerning mismanagement by the trustees. We find the award of trustee commissions of $20,000 to be very reasonable. John Rembert has served as a trustee since 1957. Thomas Gue has served since 1979. The record indicates they carried out the trust directive to provide income to Isabelle Wannamaker Sims during her lifetime. Further, the principal of the trust has increased in value.

With respect to the attorney fees, the Alice group contends the trustees wasted trust funds since 1987 by incurring attorney fees in two lawsuits which attempted to distribute the trust principal according to the 1963 agreement. They further contend the trustees should have recognized the invalidity of the 1963 agreement as a matter of law and the trustees knew the group did not agree with the distribution plan proposed in the agreement.

The attorney for the trust, a certified specialist in estate planning and probate law, was hired in 1987, some five years before the final hearing in this case. During those five years, the attorney represented the trust in two separate attempts to settle the trust. Furthermore, she successfully had a $1.5 million lawsuit filed by the Alice group against the trust and the trustees individually dismissed. This was especially significant since the trust contained less than $500,000 at the time.

It is unfortunate this litigation has occurred between family members. However, the trial judge, in finding the fees appropriate, considered all the factors enumerated in *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991). He did not abuse his discretion.

The Alice group further complains that attorney fees were awarded based on affidavits which were submitted after the hearing with no opportunity for cross-examination. However, nothing in the record before us shows the Alice group objected to this procedure or requested cross-examination. *Cen-*

*tury 21 Horton Real Estate v. Sokcevic*, 300 S.C. 8, 386 S.E. (2d) 270 (1989) (appellant has duty to provide adequate record for court to review on appeal).

Affirmed.

SHAW and CONNOR, JJ., and HOWARD, Acting J., concur.